# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| POWER INTEGRATIONS, INC., <br><br> **Plaintiff,** <br><br> v. <br><br> HON. DAVID KAPPOS, Under Secretary of Commerce for Intellectual Property and Director, United States Patent and Trademark Office, <br><br> **Defendant.** | **Civil Action No. 11-cv-01254 (BJR)** <br><br> **MEMORANDUM OPINION** |

### GRANTING DEFENDANT'S MOTION TO DISMISS

Before the Court is a motion by Defendant David Kappos, Director of the United States

Patent and Trademark Office, to dismiss the case for lack of subject matter jurisdiction under

Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for transfer to the United States

Court of Appeals for the Federal Circuit. The suit by Plaintiff Power Integrations, a patent

owner, asks this Court to review a decision made by the USPTO's Board of Patent Appeals and

Interferences ("BPAI") in a patent reexamination proceeding.[1] USPTO Director Kappos

(hereinafter "USPTO") argues that under the Patent Act, patent owners may seek court review

only in the Federal Circuit, and not in this Court. Thus, Defendant moves to dismiss the case or,

in the alternative, transfer it to the Federal Circuit. Power Integrations has also moved for partial

summary judgment, seeking declaratory relief on the jurisdiction question. As explained in

further detail below, the 1999 amendments to the Patent Act removed this Court's jurisdiction

over Plaintiff's claim, and for that reason Defendant's Motion to Dismiss must be granted.

---

[1] The BPAI was renamed the Patent Trial and Appeal Board following the USPTO decision at issue in this case. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat 284, 290 (2011).

# I. STATUTORY FRAMEWORK

## A. The Patent Reexamination Process

Under the Patent Act, patent owners and third parties may initiate a "reexamination" proceeding to confirm or challenge the validity of a previously issued patent. *See* 35 U.S.C. §§ 302-307. 35 U.S.C. § 302 gives "any person at any time" the right to request a reexamination, and describes the requirements for such a request. The Director of the USPTO then determines whether the reexamination request raises a "substantial new question of patentability." 35 U.S.C. § 303. If not, the reexamination request is denied. *Id.* If a substantial new question of patentability does exist, the Director orders a reexamination and gives both the owner and (if different) the requester opportunity to weigh in. *Id.* § 304. At that point, the reexamination goes forward "according to the procedures established for initial examination" – that is, the process undertaken by the USPTO to examine a new patent application. *Id.* § 305.

Once the patent examiner delivers a final decision, 35 U.S.C. § 306 governs the rights of patent owners to appeal. At all times relevant to this case, section 306 read as follows:

> The patent owner involved in a reexamination proceeding under this chapter may appeal under the provisions of section 134 of this title, and may seek court review under the provisions of sections 141 to 145 of this title, with respect to any decision adverse to the patentability of any original or proposed amended or new claim of the patent.

35 U.S.C. § 306 (2006). This case concerns the scope of the right to "seek court review," as explained and expressed in the language of sections 134, 141 and 145. These sections, unlike section 306, have undergone several revisions.

## B. The 1999 Amendments to the Patent Act

In 1999, the American Inventors Protection Act ("AIPA"), Pub. L. No. 106–113, 113 Stat. 1501 (1999) revised sections 134, 141, and 145, among other things. The AIPA left section 306 intact. Congress also created an *inter partes* reexamination procedure, which supplemented the existing *ex parte* procedure by providing an alternative route for third parties wishing to participate in the reexamination process and take appeal. *See* 35 U.S.C. §§ 311-19. The salient aspects of these amendments are described below.

### i. Section 134

In 1980, when Congress originally created the reexamination procedure and added section 306 to the Patent Act, the appeal provisions of section 134 referred only to patent applicants. Congress left that aspect of the statute unchanged when it created the reexamination procedure in 1980, so from 1980 until 1999, section 134 provided:

> An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal.

35 U.S.C. § 134 (1994). However, in 1999 Congress revised section 134 to add a reference to patent owners, and to separate "patent applicants," "patent owners," and "third parties." After the 1999 amendments, section 134 read:

> **(a) Patent applicant.**—An applicant for a patent, any of whose claims has been twice rejected, may appeal from the decision of the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal.
> **(b) Patent owner.**—A patent owner in any reexamination proceeding may appeal from the final rejection of any claim by the primary examiner to the Board of Patent Appeals and Interferences, having once paid the fee for such appeal.
> **(c) Third-party.**—A third-party requester in an inter partes proceeding may appeal to the Board of Patent Appeals and Interferences from the final decision of the primary examiner favorable to the patentability of any original or proposed amended or new claim of a patent, having once paid the fee for such appeal.

35 U.S.C. § 134 (2006).

### ii. Section 141

Before 1999, section 141 (like section 134) made no mention of patent owners. It

provided, in relevant part:

> An applicant dissatisfied with the decision in an appeal to the Board of Patent
> Appeals and Interferences under section 134 of this title may appeal the decision
> to the United States Court of Appeals for the Federal Circuit. By filing such an
> appeal the applicant waives his or her right to proceed under section 145 of this
> title.

35 U.S.C. § 141 (1994). In 1999, Congress added a sentence dealing explicitly with the

appeal rights of patent owners, such that the relevant section, including minimal

amendments in 2000 and 2002, read as follows:

> An applicant dissatisfied with the decision in an appeal to the Board of Patent
> Appeals and Interferences under section 134 of this title may appeal the decision
> to the United States Court of Appeals for the Federal Circuit. By filing such an
> appeal the applicant waives his or her right to proceed under section 145 of this
> title. A patent owner, or a third-party requester in an inter partes reexamination
> proceeding, who is in any reexamination proceeding dissatisfied with the final
> decision in an appeal to the Board of Patent Appeals and Interferences under
> section 134 may appeal the decision only to the United States Court of Appeals
> for the Federal Circuit.

35 U.S.C. § 141 (2006).

### iii. Section 145

Section 145 provides, as an alternative to a Federal Circuit appeal, the right to

bring a "civil action" in district court to establish patent rights following an unsatisfactory

decision by the BPAI. Unlike an appeal under section 141, the district court in a section

145 can admit new evidence and "must make its own findings *de novo*." *Kappos v.

Hyatt*, 132 S. Ct. 1690, 1696 (2012). The extent to which this alternative route is

available to patent owners lies at the heart of this dispute. Prior to 1999, section 145

provided, in relevant part:

> An applicant dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under section 134 of this title may unless appeal has been taken to the United States Court of Appeals for the Federal Circuit, have remedy by civil action against the Commissioner in the United States District Court for the District of Columbia if commenced within such time after such decision, not less than sixty days, as the Commissioner appoints.

35 U.S.C. § 145 (1994). In 1999, Congress revised section 145 to replace the reference to "section 134" with "section 134(a)." Thus, after enactment of the AIPA in 1999, section 145 refers specifically to part (a) of section 134, which authorizes BPAI appeals for "patent applicant[s]." *See* 35 U.S.C. § 134(a) (2006).

### iv. *Inter Partes* Procedure

Because the reexamination at issue in this case was *ex parte*, the only element of the *inter partes* procedure at issue in this case is the appeal provision, originally codified at 35 U.S.C. § 315.[2] The AIPA provided that the owner of a patent that was challenged in an *inter partes* proceeding "may appeal under the provisions of section 134 and may appeal under the provisions of sections 141 through 144, with respect to any decision adverse to the patentability of any original or proposed amended or new claim of the patent." 35 U.S.C. § 315 (2006). This appeal provision is separate from the appeal provisions governing patent owners in *ex parte* proceedings, described above.

### C. The 2011 Amendments to the Patent Act

On September 16, 2011, Congress passed the Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, 125 Stat. 284 (2011), which made changes to sections 134, 141, 145, and 306 of Title 35, as well as to the jurisdiction statute governing the Federal Circuit.

---

[2] Congress revised the *inter partes* section of the Patent Act in 2011. The appeal provision now appears at 35 U.S.C. § 319, in a somewhat altered form. *See* Pub. L. 112-29 § 6(a), 125 Stat. at 304.

The 2011 amendments to the relevant portions of section 134 and section 145 were minimal. In section 134, Congress replaced "any reexamination with "a reexamination." *See* Pub. L. No. 112-29 § 7(b), 125 Stat. 284, 313-14 (2011). Congress also replaced this Court with the United States District Court for the Eastern District of Virginia in a technical amendment to section 145, leaving that section otherwise unchanged. *Id.* § 9(a), 125 Stat. at 316.

Section 141, which authorizes appeals to the Federal Circuit, was reorganized in 2011 to separate "examinations" and "reexaminations." *Id.* § 7(c)(1), 125 Stat. at 314. As reorganized, section 141(a) authorizes appeals from initial examinations and section 141(b) authorizes appeals from reexaminations, but – apart from changing "any reexamination" to "a reexamination" – the 2011 amendments left the language of section 141 intact. *See id.*

Finally, Congress revised section 306 to substitute "144" for "145," such that the post-2011 version of the statute allows patent owners to "seek court review under the provisions of sections 141 to 144." *See id.* § 6(h)(2)(A), 125 Stat at 312.

Congress attached different effective dates to these revisions, but no provision was retroactive. The minimal change to section 134 took effect one year from the date of enactment, and applied only to reexamination proceedings commenced on or after that date. *Id.* § 7(e), 125 Stat. at 315. The technical revision concerning venue in section 145 took effect on the date of enactment, and only applied to civil actions commenced on or after that date. *Id.* § 9(b), 125 Stat. at 316. The reorganization and minor revisions in section 141 took effect one year after the date of enactment, and applied only to proceedings commenced on or after that date. *Id.* § 7(e), 125 Stat. at 315. The revision to section 306, perhaps the most pertinent in this case, took effect

on the date of enactment and applied "to any appeal of a reexamination before the Board of

Patent Appeals and Interferences or the Patent Trial and Appeal Board that is pending on, or

brought on or after, the date of the enactment of this Act." *Id.* § 6(h)(2)(B), 125 Stat. at 312-13.


## II. FACTS AND PROCEDURAL HISTORY

Power Integrations owns United States Patent No. 6,249,876 (hereinafter the "876

patent") entitled "Frequency Jittering Control for Varying the Switching Frequency of a Power

Supply." Compl. ¶ 2. On October 20, 2004, in a separate litigation, Power Integrations brought

a patent infringement claim against Fairchild Semiconductor in the United States District Court

for the District of Delaware.[3] During the course of that litigation, the defendant Fairchild

Semiconductor requested an *ex parte* re-examination of patent claims 1 and 17-19 in the 876

patent. Compl. ¶ 7.

The patent examiner reexamined the 876 patent and found that the challenged claims

were anticipated by an earlier patent and two published articles. *Id.* ¶ 8; *see* 35 U.S.C. § 102

(precluding patents on inventions previously patented or described in a printed publication).

USPTO issued the examiner's "Final Office Action" on July 9, 2009. Compl. ¶ 8. Power

Integrations appealed the examiner's determination to the BPAI, and the BPAI affirmed the

examiner's decision on December 22, 2010. *Id.* ¶ 9. The BPAI denied a petition for rehearing

on May 11, 2011. *Id.* Power Integrations then filed suit in this Court, seeking review of the

BPAI's decision.

According to Power Integrations, the BPAI erred when it evaluated the 876 patent by

applying the wrong definition of "couple," in violation of case law and the USPTO's manual,

and contrary to a declaratory finding made by the Delaware district court in the Fairchild

---

[3] See *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 04-1371 (D. Del., filed Oct. 20, 2004).

infringement litigation.  *Id.* ¶¶ 10-13.  Power Integrations requests from this Court a declaratory

judgment that it was entitled to the patent, reversal of the BPAI's ruling, and remand to the

USPTO with orders to issue a reexamination certificate confirming the patentability of the claims

in the 876 patent.  *Id.*, Request for Relief.

In the Complaint, Power Integrations cites 35 U.S.C. § 145 and 35 U.S.C. § 306 as

granting this Court jurisdiction to review decisions of the BPAI.  *Id.* ¶ 4-5.  Power Integrations

avers that it has not appealed the BPAI's decision to the Federal Circuit.  *Id.* ¶ 17.  USPTO

moves to dismiss, arguing that patent owners may seek review of *ex parte* reexamination

decisions only in the Federal Circuit.  *See* Def's Motion to Dismiss, or, in the Alternative, to

Transfer Case to Federal Circuit (hereinafter "Def's Mot.").  Power Integrations moves for

partial summary judgment on essentially the same question, requesting a declaration that this

Court has jurisdiction to review *ex parte* reexamination decisions.  *See* Pl's Motion for Partial

Summary Judgment (hereinafter "Pl's Mot.").


## III. LEGAL STANDARD[4]

When a party files a motion to dismiss for lack of subject-matter jurisdiction under Fed.

R. Civ. P. 12(b)(1), "the plaintiff[ ] bear[s] the burden of proving by a preponderance of the

evidence that the Court has subject matter jurisdiction." *Biton v. Palestinian Interim Self-Gov't

Auth.*, 310 F. Supp. 2d 172, 176 (D.D.C. 2004). The court must accept as true all factual

allegations in the complaint, but those allegations "will bear closer scrutiny in resolving a

12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* (internal

quotations omitted). Because subject-matter jurisdiction focuses on a court's power to hear the

---

[4] Because the Court grants the USPTO's motion to dismiss for lack of subject matter jurisdiction, it is unnecessary to put forth the legal standard governing motions for summary judgment under Fed. R. Civ. P. 56.

plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority. *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).

## IV. DISCUSSION

This dispute hinges on whether the 1999 amendments to the Patent Act removed from patent owners the right to seek review in district court of a reexamination decision made by the BPAI. Power Integrations argues that because the relevant version of section 306 explicitly referenced section 145, the right to "seek court review" enshrined in section 306 includes the right to challenge BPAI decisions in this Court under section 145. Pl's Mot. at 11. According to Power Integrations, Congress's decision not to amend section 306 in 1999 further supports that view. Power Integrations argues that "Congress deliberately chose section 306 as the vehicle to create a freestanding cause of action for patent owners in this Court," so any change to that cause of action must involve amending section 306. *Id.* at 15.

Power Integrations also contends that the differences in language between section 306 and the *inter partes* appeal provision clearly signal Congress's intent to preserve both avenues of review for *ex parte* reexaminations. Pl's Mot. at 17; *compare* 35 U.S.C. § 306 (permitting "court review under the provisions of sections 141 to 145"), *with* 35 U.S.C. § 315 (2006) (permitting "appeal under the provisions of sections 141 through 144"). Under this argument, the omission of section 145 in the *inter partes* appeal provision, and the use of "appeal" rather than "court review," indicate that Congress intended to preserve *de novo* review in district court for patent owners who receive adverse decisions from the BPAI in *ex parte* reexamination proceedings. Power Integrations suggests that because *inter partes* proceedings are more exhaustive, and more

closely resemble litigation, it would make sense for Congress to limit judicial review in those cases while retaining two avenues of court review for *ex parte* proceedings. Pl's Mot. at 18, n. 5. Finally, Power Integrations cites to the legislative history of the 1999 amendments, and prior attempts to amend section 306, in support of the proposition that the 1999 amendments were meant to establish *inter partes* procedure, not to alter the *ex parte* procedure or judicial review. *Id.* at 19-21.

The USPTO argues that the 1999 amendments fundamentally changed patent owners' right to judicial review. Specifically, the USPTO points to the amendments Congress made to sections 134, 141, and 145 as evidence that Congress intended to remove from patent owners the right to review in this Court. In the USPTO's view, patent owners possessed a right to district court review prior to the 1999 amendments, despite the lack of any reference to patent owners in section 145, because the courts naturally construed "applicant" in § 145 to cover patent owners as well. *See* Def's Mot. at 6 (citing *Joy Techs., Inv. v. Manbeck*, 751 F. Supp. 225, 235-36 (D.D.C. 1990)). But after the 1999 amendments, the USPTO argues, it is "no longer appropriate to construe 'applicant' in § 145 to cover patent owners" because sections 134, 141, and 145 were specifically amended to describe the appeal rights of "patent owners." *Id.* at 8. The USPTO points to three revisions that, it contends, foreclose this cause of action:

    (1) Congress inserted into section 134 a specific clause, 134(b), delineating the right of "patent owners" to appeal reexamination decisions to the BPAI;

    (2) Congress narrowed the language of section 145 to "appeal[s] under section 134(a)"; and

    (3) Congress added a sentence to section 141 providing that "[a] patent owner…in any reexamination proceeding…may appeal the decision only to the United States Court of Appeals for the Federal Circuit."

The USPTO interprets section 306 as merely cross-referencing the sections of the Patent Act that concern judicial review, such that judicial review is authorized under section 306 only to the extent permitted under those other sections. *See* Def's Mot. at 12. Though section 306, post-1999, still referred to the right to "seek court review" under section 145 (a right USPTO contends no longer existed at that time), the USPTO argues that section 306 must be read *in pari materia* with the other sections. *Id.* at 15. In the USPTO's view, reading section 306 to grant a right of action that other, later-amended sections expressly foreclose would achieve a nonsensical result. *Id.* As the Court explains below, the USPTO has the better argument.

## A. The Judicial Review Rights of Patent Owners Prior to 1999

Congress created the reexamination procedure in 1980, and gave patent owners the right to appeal internally to BPAI, and externally to the courts, through section 306. However, the provisions authorizing internal appeal and external "court review," though identified in section 306, made no reference to patent owners at the time. In *Joy Techs., Inv. v. Manbeck*, the court acknowledged that "'applicant' does not precisely describe [a patent owner's] status," but still permitted an action by a patent owner because "viewing section 145 as a whole, it is clear that 'applicant' in the statute applies both to a patent applicant…and to a patent owner." 751 F. Supp. at 235-36. As the court explained:

> Section 306 makes the court review provisions of section 145 applicable in reexamination proceedings; however, section 145 uses only the term "applicant" in referring to the party bringing the action. If section 145 is to cover civil actions arising from reexamination proceedings, the term "applicant" in that section must be construed to cover patent owners bringing those actions.

*Id.* at 236. Other courts have read the 1980 amendments in the same way. *See Sigram Schindler Beteiligungsgesellschaft MBH v. Kappos,* 675 F. Supp. 2d 629, 631-32 (E.D.Va. 2009) (recognizing that prior to 1999, patent owners could elect to pursue court review in the Federal

Circuit or in district court, because section 306 "effectively applied the court review provisions governing patent *applicants* to patent *owners* involved in *ex parte* patent reexaminations"); *Teles AG v. Kappos*, 846 F. Supp. 2d 102, 109 (D.D.C. 2012) (same) (citing *Sigram Schindler*), *appeal docketed*, No. 12-1297 (Fed. Cir. Apr. 2, 2012); *Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office,* 882 F.2d 1570, 1572 (Fed. Cir. 1989) ("Under the patent statute, the patent owner is given a right to review of an examiner's final reexamination decision, 35 U.S.C. § 306 (1982), first before the PTO Board of Patent Appeals and Interferences under section 134, and then either by direct appeal of the board's decision to [the Federal Circuit] under section 141, or by suit against the PTO in district court with a right of appeal to [the Federal Circuit] under section 145.").

The parties apparently agree that prior to 1999, patent owners enjoyed the right to court review under either avenue. Power Integrations contends that the 1999 amendments left this reading of section 306 intact. The USPTO asserts that the 1999 amendments to sections 134, 141, and 145 cannot be so readily dismissed. This Court must therefor examine the 1999 amendments to determine what effect they had on the statutory scheme for court review of *ex parte* patent reexaminations.

In construing the statute, this Court recognizes the principle that "when a statute speaks with clarity to an issue, judicial inquiry into the statute's meaning, in all but the most extraordinary circumstance, is finished." *AT & T v. FCC,* 452 F.3d 830, 835 (D.C. Cir. 2006) (explaining that under "traditional tools of statutory construction," the court "begin[s], as always, with the plain language of the statute.") (citations omitted). Furthermore, a court must if possible "give meaning to every clause of the statute." *Williams v. Taylor,* 529 U.S. 362, 407 (2000).

The parties drape their respective arguments on several proposed canons of statutory construction, but the Court hesitates to indulge in that exercise where the language of the statute is plain and unambiguous. In this case Congressional intent emerges with reasonable clarity from the text, and any tension between provisions is easily resolved without resort to dueling canons.

**B. The Effect of the 1999 Amendments**

The 1999 amendments go beyond mere housekeeping or reorganization. Where the internal and external appeal provisions previously contained no reference to patent owners, after 1999 the statute specifically describes the appeal rights of "patent owners" in sections 134 and 141. Section 134 expressly grants "patent owners" the right to appeal reexamination decisions to the BPAI. *See* 35 U.S.C. § 134(b) (2006). Under section 141, a "patent owner" in "any reexamination proceeding" may appeal from the BPAI's "*only* to the United States Court of Appeals for the Federal Circuit." *Id.* § 141 (2006) (emphasis added). Congress amended section 145 such that, by its plain language, it applies only to "an *applicant* dissatisfied with the decision of the Board of Patent Appeals and Interferences in an appeal under *section 134(a)* of this title." *Id.* § 145 (2006) (emphasis added).

After these amendments, the *Joy Techs* rationale no longer applies. Courts have no justification for continuing to construe the word "applicant" in section 145 to include patent owners. *See Teles AG*, 846 F. Supp. 2d at 111 ("[t]he logic of *Joy Technologies,* construing "patent applicants" to include "patent owners," is no longer applicable because the plain meaning of section 145 indicates otherwise"). Congress expressly attended to the rights of patent owners in sections 134 and 141. Also, Congress apparently felt the need to clarify that the term "applicant" in section 145 refers to a party "dissatisfied with the decision of the [BPAI] in an

appeal *under section 134(a) of this title*." 35 U.S.C. § 145 (2006) (emphasis added). Permitting review in this Court would directly contradict the amended language of section 145, as well as the amended language of section 141, which authorizes appeal by patent owners "only" to the Federal Circuit. 35 U.S.C. § 141 (2006). To cling to the rationale of *Joy Techs*, as Power Integrations suggests, would effectively ignore the 1999 amendments.

## C. Section 306 Must Be Read in Light of the 1999 Amendments

Power Integrations argues that despite the 1999 amendments, section 306 creates a freestanding cause of action that could not disappear without a direct amendment that section itself. In fact, Power Integrations gives the impression in its briefs that, absent an amendment to section 306, there was very little Congress could do in 1999 that would ever have affected the right of patent owners to judicial review. This position invests section 306 with more weight than it can bear.

True, the 1999 amendments created some "tension" with respect to section 306. *Teles AG*, 846 F. Supp. 2d at 114 (quoting *Sigram Schindler,* 675 F. Supp. 2d at 633). Section 306 refers to "court review under the provisions of sections 141 to *145*." As discussed in Part I(B)(ii) and (iii), *supra*, the post-AIPA version of section 145 plainly authorizes only patent "applicants" to pursue review in district court, and the revised language of section 141 allows patent owners to "appeal the [BPAI] decision *only* to the United States Court of Appeals for the Federal Circuit." 35 U.S.C. §§ 141, 145 (2006).[5]

---

[5] The parties also dispute the significance of Congress's language in describing the *inter partes* appeals. *Compare* 35 U.S.C. §306 (2006) (authorizing "court review under the provisions of sections 141 to 145"), *with* 35 U.S.C. § 315 (2006) (authorizing "appeal under the provisions of sections 141 to 144"). If Congress intended to preclude patent owners and third parties from bringing section 145 actions in any reexamination proceeding, Power Integrations asks, why did it draft the *inter partes* appeal provision to exclude section 145 while leaving section 306 unamended? Pl's Mot. at 17. This is a provocative question, but the *inter partes* appeal provisions have limited relevance here. None of the statutory provisions at issue in this case rely upon them. The ultimate determinant of a patent owner's appeal rights in an *ex parte* reexamination is the language of the applicable statutory provisions, *viz.*

The Court has two options to reconcile this tension.  Under the reading proposed by Power Integrations, section 306's grant of court review supersedes the 1999 amendments, because it exists independently of any tinkering that Congress might do with the substantive appeal provisions contained in sections 141 to 145.  Under the USPTO's view, section 306 grants patent owners whatever appeal rights Congress sees fit to confer in sections 141 through 145, and Congress need not amend section 306 in order to close off one avenue for appeal. Though both arguments are colorable in the abstract, only the second reflects the language of the statute and gives a harmonious meaning to all its provisions.  Power Integrations essentially asks this Court to ignore the plain language of the 1999 amendments, in favor of a lingering cross-reference and a line of cases that no longer applies.  The USPTO's reading, by contrast, gives effect to all the statutory provisions and harmonizes them.  *See Teles AG,* 846 F. Supp. 2d at 113-14 ("To give effect to the statutory provisions here, the Court understands section 306 as providing that patent owners in *ex parte* reexamination proceedings are entitled to whatever judicial review is available 'under' the current provisions of §§ 141 and 145…Any other reading of section 306 would be incompatible with the express terms of the post–1999 amended sections 141 and 145.") (citations omitted).

### D.  Applicable Case Law Supports the USPTO's Reading[6]

sections 134, 141, and 145.  *See Teles AG*, 845 F. Supp. 2d at 114 (rejecting the same argument "because the plaintiffs do not, and cannot, reconcile this reading of section 306 with the plain language of sections 141 and 145.")
[6] The Court finds nothing determinative or ultimately persuasive in the legislative history of the 1999 amendments. Judge Howell, in *Teles AG*, thoroughly summarized pre-1999 legislative efforts to remove patent owners' right to district court review of *ex parte* reexaminations, as well as the sequence of events leading to passage of the AIPA in 1999.  *See Teles AG*, 845 F. Supp. 2d at 114-17.  What legislative history exists as to the 1999 amendments supports the USPTO's reading of the statute.  *See id.* (explaining that the the AIPA and prior versions of the amendments were intended to streamline the reexamination process as a viable alternative to infringement litigation).  However, the Court does not view the legislative history as so conclusive as to merit any special reliance.  It is true that pre-1999 amendments to the Patent Act revised section 306 to provide "court review under the provisions of sections 141 to 144" only, and not section 145.  *See id.* at 115-16.  Arguably, these unenacted bills suggest that when Congress eventually did amend the Patent Act, leaving section 306 intact, the intent of the legislature was to preserve district court review for patent owners in *ex parte* reexaminations.  "[W]here Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was

As noted above, the logic underlying *Joy Techs* has no currency in a post-AIPA world. The *Joy Techs* line of cases construed the Patent Act based on the absence of any reference to "patent owners" in the statute's substantive appeal provisions. Congress fixed that problem with the 1999 amendments. Cases applying the pre-1999 version of the law offer Power Integrations no support. *See Teles AG*, 846 F. Supp. 2d at 110 ("The law has changed since the *Joy Technologies* court issued its opinion, however, and its reasoning with respect to 35 U.S.C. § 306 no longer applies").

*Teles AG* is the only case to squarely address the issue, under the version of the law applicable to this case. In a well-reasoned opinion, Judge Howell considered the language of the 1999 amendments, the pre-AIPA line of cases, and the legislative history, and determined that patent owners have no right to a district court action under section 145. 846 F. Supp. 2d at 109. The court focused on Congress's direct treatment of patent owners in the 1999 amendments. *See id.* ("[T]he 1999 amendments, which for the first time revised sections 134 and 141 to specifically refer to the rights of patent owners, as opposed to patent applicants, while restricting coverage of section 145 to patent applicants, removed this Court's jurisdiction to hear the plaintiffs' claims").

Power Integrations cites one case, *Canady v. Erbe Elektromedizin GMBH,* 271 F. Supp. 2d 64 (D.D.C. 2002), for the proposition that a patent owner's right to district court review survived the 1999 amendments. *Canady* concerned whether to lift a stay imposed due to pending

---

not intended." *Russello v. United States,* 464 U.S. 16, 23 (1983). But the unenacted versions do not conclusively establish the meaning of the amendments that Congress actually enacted, and the principle recited in *Russello* does not hold where "other sections…cut against [a party's] reading" of the statute. *Tarrant Reg'l Water Dist. v. Herrmann*, 133 S. Ct. 2120, 2131 (2013). That is certainly the case here. The history reveals no particular reason why Congress chose not to amend section 306 in 1999. *See Teles AG*, 845 F. Supp. 2d at 117 (explaining that "changes were made" but identifying no explanation in the legislative history). Judge Howell found "no indication or comment in the legislative history that the removal of the [pre-1999] amendments to section 306 in any way changed the patent owners' right to appeal from what was intended in [the original version of the bill that became the AIPA]." *Id.* The Court concurs, and also emphasizes that confirmation from the legislative history is unnecessary where, as here, the intent of Congress presents itself in the plain language of the amended statute.

*ex parte* reexamination proceedings. *Id.* at 65. In that case the court was notifying the parties as to the "Guiding Standard of Review for an Appeal of the PTO's Decision to This Court," which the court presumably intended to apply should the patent owner in that case receive an adverse BPAI decision and decide to challenge it in district court. The court suggested that "the party that receives an adverse decision from the PTO's pending reexamination…may appeal to the [BPAI]," and "[w]hen administrative remedies have been exhausted, that party may appeal to either this court or to the Federal Circuit." *Id.* at 77-78 (citing 35 U.S.C. § 306).

This statement was unquestionably dicta, and focused not on the court's jurisdiction but on the proper standard for reviewing the BPAI's findings. *Id.* By contrast, other courts have suggested (albeit in dicta) that the Federal Circuit is the only avenue for patent owners to appeal adverse *ex parte* reexamination decisions. *See, e.g., Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.,* C 03-1431 SBA, 2007 WL 1655625 at *5 (N.D. Cal. June 7, 2007) ("Moreover, if any claim were ultimately rejected by the PTO, [patent owner] could appeal the examiner's decision to the Board of Patent Appeals and Interferences, which decision could in turn be appealed to the Federal Circuit") (citing 35 U.S.C. § 134(b); 35 U.S.C. § 141); *Flexiteek Americas, Inc. v. PlasTEAK, Inc.,* 08-60996-CIV, 2012 WL 5364263 at *9 (S.D. Fla. Sept. 10, 2012), *report and recommendation adopted as modified,* 08-60996-CIV, 2012 WL 5364247 (S.D. Fla. Oct. 31, 2012) ("Once the PTO has completed its [*ex parte*] reexamination, the patent owner may appeal the PTO's cancellation of any claim to the BPAI and, thereafter, to the Federal Circuit") (citing 35 U.S.C. § 306).[7] These statements carry little weight, as they were made

_____

[7] See also *Heinl v. Godici,* 143 F. Supp. 2d 593 (E.D. Va. 2001). The court in *Heinl* denied a patent owner's motion to enjoin the USPTO from undertaking a second reexamination of a patent, because granting a reexamination is not final agency action. *Id.* at 597-98. In the context of explaining why, the court described the internal and external appeals process for reexaminations, and stated that "judicial review may then appropriately be sought in either the Federal Circuit based on the administrative record or the District Court for the District of Columbia in a trial *de novo.*" *Id.* at 598 (citing 35 U.S.C. § 306. This statement was dicta, like that in *Canady* and the others quoted herein, and it offers just as little support.

without any jurisdictional analysis. *Teles AG* is the only case on point, and this Court agrees with its interpretation of the statute.

### E.  The 2011 Amendments Confirmed the Changes Made in 1999[8]

In 2011, Congress resolved the "tension" described in Part IV(C), *supra*, by striking section 306's reference to section 145. *See* Pub. L. No. 112-29 § 6(h)(2)(A), 125 Stat. 284, 312 (2011) ("Section 306 of title 35, United States Code, is amended by striking '145' and inserting '144.' ").  The USPTO argues that Congress was simply clarifying the state of the law by cleaning up section 305 to conform to sections 141 and 145.  Power Integrations suggests that the 2011 amendments must have worked a substantive change in the law, because amending section 306 would have been unnecessary if the 1999 AIPA had already removed the right of patent owners to review *ex parte* reexaminations in district court.

The Court notes that "when a legislative or executive body adopts a new clarifying law or rule, it does not necessarily follow that an earlier version did not have the same meaning." *Baptist Mem'l Hosp.-Golden Triangle v. Sebelius*, 566 F.3d 226, 229 (D.C. Cir. 2009) (citing *Brown v. Thompson,* 374 F.3d 253, 259 (4th Cir.2004); *Piamba Cortes v. American Airlines, Inc.,* 177 F.3d 1272, 1283 (11th Cir.1999)).  In this case the Court finds that Congress intended the 2011 amendments to conform to the 1999 amendments, not to change the law.  *See* H.R. Rep. No. 112–98(I), at 77 (2011), 2011 U.S.C.C.A.N. 67, 102 ([section] 306 is amended to conform to the changes made by S 4605 of the American Inventors Protection Act of 1999, Public Law 106–113, to [sections] 134 and 141 of title 35");  *Teles AG*, 845 F. Supp. 2d at 114 (describing the 2011 amendments as "the true 'housekeeping' measures," because "[t]hey clarify any ambiguity

---

[8] The parties appear to agree that the 2011 amendments were not retroactive and do not govern court review of the reexamination proceeding at issue.  The Court reaches the same conclusion.  Congress passed the AIA on September 16, 2011, several months after PI had requested and been denied a rehearing by the BPAI.  Accordingly, the Court will consider the 2011 amendments and their effective dates only insofar as they shed light on Congress's view of the state of the law immediately prior to the enactment of the AIA.

left by the 1999 amendments, and confirm for the Court that Congress intended the 1999 amendments to remove this Court's jurisdiction over patent owners' *ex parte* reexamination claims"). To conclude that Congress waited until 2011 to remove district court review in *ex parte* reexaminations would make meaningless the revisions to sections 134, 141, and 145 that Congress enacted in 1999.

### F.  Transfer to the Federal Circuit

28 U.S.C. § 1631 provides that "[w]henever a civil action is filed in a court…including a petition for review of administrative action…and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."  Power Integrations agrees that transfer is the appropriate action if this Court grants the USPTO's motion to dismiss.  *See* Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. #18) at 16, n. 10.  The parties have given the Court no reason to believe that Power Integrations acted in bad faith in bringing suit in this Court, and the Court acknowledges that the only case to squarely address this issue, *Teles AG*, was decided after the initiation of this action.  For these reasons, the Court will transfer the case to the Federal Circuit, which can, in turn make its own determination as to the merits.  *See Teles AG*, 846 F. Supp. 2d at 119;  *Sigram Schindler*, 675 F. Supp. 2d at 639.

An Order consistent with the Memorandum Opinion will issue separately.

November 18, 2013

*Barbara J. Rothstein*

BARBARA J.  ROTHSTEIN
UNITED STATES DISTRICT JUDGE